1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 TEVYN ANTWYONE WILEY,                    No.  2:15-cv-1597 KJM DB P

12              Petitioner,

13       v.                                 FINDINGS AND RECOMMENDATIONS

14 SUZANNE M. PEERY,

15              Respondent.

16

17       Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ

18 of habeas corpus under 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

19 against him on April 6, 2012 in the Sacramento County Superior Court for, among other things,

20 shooting at an occupied vehicle and attempted murder.  Petitioner seeks federal habeas relief on

21 five grounds: (1) an instruction about a witness's plea agreement violated due process; (2) the

22 admission of out-of-court statements violated the Confrontation Clause; (3) the admission of

23 another trier of fact's finding violated due process; (4) the trial court's imposition of multiple

24 sentences for a single act or omission violated due process; and (5) the evidence was insufficient

25 to show that he was the shooter.  For the reasons set forth below, the undersigned recommends

26 that the habeas petition be denied.

27 ////

28 ////

1

**BACKGROUND**

**A. Factual background[1]**

Early in the morning on October 12, 2008, defendant Christian was driving his Chevy Cavalier and cut off a truck at a gas station that was adjacent to his car. Behind his Cavalier was a Dodge Charger with passenger Killa Mobb member Antonio Cornelius. A Lexus driven by Killa Mobb member Ravneel Atwaal pulled into the gas station and parked at a gas pump located on the passenger side of the Charger. The people in the Cavalier were exchanging hard looks with the people in the truck. Christian shouted "Killa Mobb." Somebody in the truck yelled out "'FAB.'" Cornelius mentioned something about a gun. Somebody in the truck said, "Hey, man, we don't want to involve that." Cornelius began shooting at the truck.[fn 1] When Cornelius stopped shooting, the truck began driving away. As the truck drove away, defendant Wiley, who was in the front passenger's seat of the Cavalier and was also a member of Killa Mobb, started shooting at the truck. The driver of the truck was hit in the back and one of his passengers was hit in the neck.

Later that night at a friend's house, Atwaal was told by another friend, Malachi Riley, who had been inside the Cavalier during the shooting, that the shooting was between FAB and Killa Mobb.

A week or two after the shooting when Christian was at a party, Christian said to one of the people at whom they fired, "you know we had to fire shots at you, I'll do it again."

At trial, Atwaal testified for the People under an agreement in which Atwaal had to testify truthfully in this case in exchange for a sentence of seven years and eight months in prison (rather than a maximum exposure of approximately 23 years) in another case in which he, Christian, and Whitfield assaulted a man at a gasoline station.

Also testifying for the People was Brian Bell, a gang detective at the Sacramento Police Department. The nature of gang culture was

---

[1] The court takes the following factual summary from the California Court of Appeal for the Third Appellate District's unpublished opinion affirming petitioner's conviction. People v. Christian, No. C070838, 2014 WL 618255 (Cal. Ct. App. Feb. 18, 2014). The Court of Appeal's "[f]actual determinations . . . are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). Petitioner does not challenge the Court of Appeal's factual findings. (Pet. (ECF No. 1) at 17; Trav. (ECF No. 16) at 2.); see also Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (presumption that appellate court's factual findings are correct particularly appropriate if petitioner has not challenged them).

such that gang members knew if they were going to go out and be seen, there was a good chance that they might run into a rival gang and if they did, they needed to have a gun on them to "prepare[ ]" themselves "in case things were to go south." A common theme in gang-related crimes was they started when one gang member claimed his gang to a rival gang and that claim would eventually escalate into a violent crime. Respect was an integral aspect of gang culture and something for which gang members strived. In his experience, when a rival gang member yelled out his gang name and the opposite party did not respond with some type of confrontation (but only with a hand sign or the name of the rival gang), the opposite party would lose respect, be perceived as weak, and be unsuccessful in committing gang crimes.

In Bell's opinion, Christian was a Killa Mobb gang member because, among other things, about two weeks after the crimes here, Christian and Whitfield and about six to eight other Killa Mobb gang members took part in a "beatdown of an individual at [a] Shell gas station."[fn 2] As a result of that incident, Christian was found guilty of attempted murder committed for the benefit of Killa Mobb and Whitfield was found guilty of assault with a deadly weapon committed for the benefit of Killa Mobb.

In Bell's opinion, Wiley also was a Killa Mobb gang member because, among other things, on November 8, 2008, he was with Christian at Yager's bar in Folsom when Christian was arrested for retrieving a handgun after Wiley had gotten in a fight there.

Based on a hypothetical mirroring the facts of the shooting here, Bell was of the opinion the shooting here was committed for the benefit of Killa Mobb.

> [fn 1] Cornelius and other Killa Mobb gang members all had just been together at a party where Cornelius was "flashing" a gun in a "flamboyant manner" and either Christian or the man who was driving the Charger, Xavier Whitfield, told him to put the gun away.

> [fn 2] This was the same incident about which Atwaal testified.

People v. Christian, No. C070838, 2014 WL 618255, at **1-2 (Cal. Ct. App. Feb. 18, 2014).

## B. Procedural History

The jury found the driver of one of the cars carrying Killa Mobb members, defendant George Edward Christian, guilty of shooting at an occupied vehicle and seven counts of attempted murder and

3

found that the crimes were committed for the benefit of the Killa Mobb, all under an aiding and abetting or natural and probable consequences theory. The jury also found defendant Tevyn Antwyone Wiley guilty of those crimes and enhancements, along with additional enhancements because he was a shooter.

Id. at 1. Petitioner was sentenced to 175 years to life in prison. (1 CT 178-82 (LD 1).[2])

On February 18, 2014, the Court of Appeal affirmed the trial court's judgment. Christian, 2014 WL 618255, at *1. Petitioner sought review from the California Supreme Court, which was denied on May 14, 2015. (See Pet. at 2.)

On April 4, 2013, petitioner filed a habeas petition in the superior court. (LD 19.) He argued that the court should reduce his restitution fine. (Id. at 5.) The superior court denied this petition on the merits on May 23, 2013. (LD 20.)

On November 17, 2014, he filed a second habeas petition in the superior court. (LD 21.) In this petition, he raised, for the first time, the fourth and fifth claims that he raises here. On January 15, 2015, the superior court denied his second petition. (LD 22.) The court ruled that the petition was successive and, hence, procedurally barred under California law. (Id. at 1–2.)

On February 26, 2015, the Court of Appeal summarily denied review. (LD 24.) On July 8, 2015, the California Supreme Court also denied review without comment. (LD 26.)

On July 24, 2015, petitioner filed this federal habeas petition. (ECF No. 1.) The state answered on March 10, 2016. (ECF No. 14.) Petitioner filed a traverse. (ECF No. 16.)

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

////

---

[2] Respondent lodged the state court record here. (See ECF No. 15.) The Clerk's Transcript is identified as "CT," the record of transcript as "RT," and each document is also identified by its Lodged Document number, "LD," assigned to it by respondent.

4

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

5

governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). First, he may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. Id. at 1147.  Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").  For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst, 501 U.S. at 803).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a

federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Richter, 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

## PETITIONER'S CLAIMS

### I.     Plea Agreement Jury Instruction

At trial, prosecution witness Atwaal testified under an agreement that he testify "truthfully" in exchange for a more lenient sentence in another case in which he, co-defendant Christian, and a third man, Whitfield, assaulted a man at a gas station. Atwaal testified that petitioner fired the shots from the Cavalier. (3 RT 624.) The court instructed the jury as follows: "You have heard evidence that . . . Atwaal testified pursuant to a[ ] negotiated plea agreement with the district attorney's office. If there is a dispute about whether Mr. Atwaal has fulfilled the terms of the

agreement, it will be the Court that decides Mr. Atwaal's compliance." <u>Christian</u>, 2014 WL 618255, at *3 (alteration in original).

Petitioner argues this jury instruction violated due process because "the process for resolving a dispute about the conditional plea agreement was not relevant to the jury's task of deciding whether the witness was credible, and the instruction could have confused the jury." (Pet. at 19–20.) He adds that it "made his trial unfair, particularly as to the crucial question of the identity of the shooter from the Cavalier." (<u>Id.</u> at 20.)

### A. State Court Decision

Petitioner raised this claim on appeal. The Court of Appeal held that the trial court erred in telling the jury that it would determine whether Atwaal complied with his plea agreement. <u>Christian</u>, 2014 WL 618255, at *3 (citing <u>People v. Fauber</u>, 2 Cal. 4th 792, 823 (1992)). The court reasoned that it was irrelevant for the jury to learn that the judge would determine Atwaal's credibility in the event of a dispute "because it arguably carried some slight potential for jury confusion." <u>Id.</u> The jury could have been confused because the instruction "did not explicitly state what is implicit within it: that the need for such a determination would arise, if at all, in connection with [Atwaal]'s sentencing, not in the process of trying defendant's guilt or innocence." <u>Id.</u>

Nevertheless, relying on <u>Fauber</u>, the Court of Appeal held that the error did not prejudice petitioner reasoning that the prosecutor "emphasized in closing argument that it was the jury who decided Atwaal's credibility[.]" <u>Id.</u> Further, the Court of Appeal noted that the court instructed the jury that "[it] alone [had to] judge the credibility or believability of the witnesses." <u>Id.</u>

### B. Analysis

While the Court of Appeal did not explicitly state that it was addressing petitioner's due process claim, its reliance on <u>Fauber</u> indicates that it considered, and rejected, the federal constitutional issue. In <u>Fauber</u>, the court noted that the petitioner raised claims challenging a similar instruction on a plea agreement as violating his rights under the "Fifth, Sixth, Eighth, and Fourteenth Amendments." 2 Cal. 4th at 820. Therefore, the California Supreme Court's analysis in <u>Fauber</u> was a consideration of, and rejection of, the petitioner's federal due process claim on

the grounds that the trial court's error did not cause the petitioner prejudice. The Court of

Appeal's adoption of this reasoning indicates that it too considered the due process challenge.

Accordingly, this court considers the reasonableness under § 2254(d) of the Court of Appeal's

decision that there was no prejudice from the trial court's error.

### 1. Legal Standards for Claim of Instructional Error

In general, a challenge to jury instructions does not state a federal constitutional claim.

Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Engle v. Isaac, 456 U.S. 107, 119 (1982);

Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). To warrant federal habeas relief, a

challenged jury instruction cannot be "merely . . . undesirable, erroneous, or even 'universally

condemned,'" but must violate "some right which was guaranteed to the defendant by the

Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973); see also Estelle, 502

U.S. at 72 (holding that to find constitutional error, there must be a "'reasonable likelihood that

the jury has applied the challenged instruction in a way' that violates the Constitution" (quoting

Boyde v. California, 494 U.S. 370, 380 (1990))); Donnelly v. DeChristoforo, 416 U.S. 637, 643

(1974).

To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so

infected the entire trial that the resulting conviction violates due process.'" Prantil v. California,

843 F.2d 314, 317 (9th Cir.1988) (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir.

1987)); see also Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("If the charge as a whole is

ambiguous, the question is whether there 'is a reasonable likelihood that the jury has applied the

challenged instruction in a way' that violates the Constitution." (quoting Estelle, 502 U.S. at 72));

Henderson v. Kibbe, 431 U.S. 145, 156–57 (1977). In making this determination, the challenged

jury instruction "'may not be judged in artificial isolation,' but must be considered in the context

of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414

U.S. at 147); see also Prantil, 843 F.2d at 317 (The habeas court must evaluate the challenged jury

instructions "'in the context of the overall charge to the jury as a component of the entire trial

process.'" (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984))).

////

## 2. Discussion

Both the instructions given at trial and the argument of the parties made clear to jurors that they had the responsibility of determining the credibility of Atwaal. Jurors were instructed that "[y]ou alone must judge the credibility or believability of the witnesses," and "you must decide whether an eyewitness gave truthful and accurate testimony." (4 CT 1025, 1033.) They were also given an extensive instruction about how to consider Atwaal's testimony, including the following instruction if they found Atwaal to be an accomplice:

> Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that statement or testimony the weight you think it deserves after examining it with care and caution in the light of all the other evidence.

(Id. at 1040.) Both the prosecutor and defense counsel stressed that jurors were the ones to determine Atwaal's credibility. The prosecutor stated, "[a]nd at the end of the day, if all of you say, we don't believe Mr. Atwaal, that's your option as a jury. And I'm not going to say really anything to talk you out of that." (6 RT 1559.) Defense counsel argued that about Atwaal's plea deal and the reasons jurors should look at his testimony with suspicion. (7 RT 1711-12.) `

The risk that jurors would have made several inferences from the challenged instruction – that the judge was responsible for determining the truthfulness of Atwaal's testimony and that that determination meant jurors were somehow supposed to assume Atwaal's testimony was true – is simply too attenuated to override the clear instructions to jurors that they were the arbiters of witness credibility. This court finds no reasonable possibility the erroneous instruction rendered petitioner's trial fundamentally unfair. The Court of Appeal's determination that petitioner did not suffer prejudice as a result of the erroneous instruction was not unreasonable.

## II.     Confrontation Clause Violation for Out-of-court Statements

At trial, the prosecution offered Detective Bell as an expert on gang membership. Bell opined that petitioner was a Killa Mobb member on October 12, 2008, the date on which he allegedly committed the crimes at issue. Christian, 2014 WL 618255, at *4. One of the bases for his opinion was that "on November 8, 2008, he was with Christian, who was another Killa Mobb

gang member, at a bar in Folsom when Christian was arrested for retrieving a handgun after [petitioner] had gotten in a fight there." Id. According to petitioner, Bell based the assertion that petitioner was at the bar with Christian on "statements from persons who witnessed the incident." (Trav. (ECF No. 16) at 6.) These statements were contained in a police report that Bell reviewed. (4 CT 1037.)

Petitioner argues the admission of this portion of Bell's testimony violated the Confrontation Clause. Petitioner contends the statements were inadmissible hearsay because they were admitted for the truth of the matter asserted, i.e., that he was a gang member. (Pet. (ECF No. 1) at 25.) He adds that the prosecution made no showing that the declarants were unavailable, and that he had no opportunity to cross-examine them, whether prior to or during his trial. (See Pet. at 25.)

Petitioner largely bases his argument on the Supreme Court's decision in Williams v. Illinois, 567 U.S. 50 (2012). (Id. at 23–25.) He cites Williams for the proposition that "information relied upon by experts [is] . . . admitted for its truth." (Id. at 23.)

### A. State Court Decision

Petitioner also raised this issue on appeal. The Court of Appeal rejected petitioner's Confrontation Clause argument. Christian, 2014 WL 618255, at *4. It reasoned that "the [] bar incident was offered to form the basis of [Bell's] opinion that on the day of the current crimes, [petitioner] was a member of the Killa Mobb gang." Id. Further, it reasoned that "[s]o called 'basis evidence' does not implicate the confrontation clause because it is not introduced for the truth of the matter, but rather, only to assist the jury in evaluating the expert's opinion. [Citation]." Id.

### B. Analysis

#### 1. Legal Standards for Confrontation Clause Claim

"The Confrontation Clause of the Sixth Amendment states: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Michigan v. Bryant, 562 U.S. 344, 352 (2011). "[T]his provision bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" Davis v. Washington, 547 U.S. 813, 821 (2006)

(quoting <u>Crawford v. Washington</u>, 541 U.S. 36, 51 (2004)).  However, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  <u>Crawford</u>, 541 U.S. 36, 59 n.9 (citation omitted).

"An expert may base his opinion at trial on inadmissible facts and data of a type reasonably relied upon by experts in the field."  <u>United States v. Gonzales</u>, 307 F.3d 906, 910 (9th Cir. 2002) (citing Fed. R. Evid. 703).  "When inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, however, it is necessary for the court to instruct the jury that the [otherwise inadmissible] evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence."  <u>United States v. 0.59 Acres of Land</u>, 109 F.3d 1493, 1496 (9th Cir. 1997) (citation omitted).

### 2.  Discussion

The Court of Appeal reasonably concluded that the admission of Bell's testimony did not offend the Confrontation Clause.  The Court of Appeal found that the testimony about the bar incident was offered as a basis of Bell's opinion that petitioner was a member of Killa Mobb on the day in question.  As a matter of federal law, experts may base their opinions on inadmissible hearsay on which experts in the field reasonably rely.  <u>See</u> <u>Gonzales</u>, 307 F.3d at 910.

Petitioner has not argued, much less shown, that police reports containing witness statements are not the sort of evidence upon which gang experts rely.  Further, the trial court instructed the jury not to consider the basis evidence (i.e., the police report) "as proof that the information contained in that basis evidence is true."  (4 CT at 1037.)  Further, the trial court instructed the jury that "certain evidence was admitted for a limited purpose" and that it could "consider that evidence only for that purpose and for no other."  (<u>Id.</u> at 1031.)  On this record, the Court of Appeal reasonably found that the witness statements on which Bell relied to opine that petitioner was in a gang were not admitted for their truth.  Because the witness statements were not admitted for their truth, the Confrontation Clause is not implicated.  <u>See</u> <u>Crawford</u>, 541 U.S. 36, 59 n. 9.

The Supreme Court's decision in <u>Williams</u> is not to the contrary.  In this rape case, the Court considered whether an expert's opinion testimony that the petitioner's DNA was found on vaginal

13

swabs taken from the victim violated the Confrontation Clause because the expert relied on a lab's findings, which he assumed, but did not know, to be true. Petitioner contends that the Supreme Court held in <u>Williams</u> that "information relied upon by experts [is] admitted for its truth." (Pet. at 23.)

However, that is not the holding of <u>Williams</u>. In <u>Williams</u>, a majority of the Supreme Court found that the laboratory results from a nontestifying technician which informed the expert witness were not testimonial in nature and therefore did not violate the Confrontation Clause. <u>Williams</u>, 132 S. Ct. at 2240, 2242-43. Also, a plurality concluded that the laboratory results were admitted for the nonhearsay purpose of "illuminating the expert's thought process" rather than establishing the truth of the matter asserted. <u>Id.</u> at 2240. Because the Supreme Court has provided no clear answer to this question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008).

### III. Admission of Findings of Another Trier of Fact

At trial, evidence was admitted that, "weeks after the crimes here, Christian and Whitfield and about six to eight other Killa Mobb gang members took part in a beatdown of an individual at [a] Shell gas station." <u>Christian</u>, 2014 WL 618255, at *5. "As a result of that incident, Christian was found guilty of attempted murder committed for the benefit of Killa Mobb and Whitfield was found guilty of assault with a deadly weapon committed for the benefit of Killa Mobb." <u>Id.</u> Thus, the jury in that case found Killa Mobb was a criminal street gang and applied a gang enhancement. <u>See id.</u> This was one of the reasons that Bell opined that Christian was a Killa Mobb member. <u>Id.</u> at *2.

Petitioner argues that the trial court erred in admitting this evidence because he was charged with "gang enhancements" and, hence, the jury had to decide whether Killa Mobb was a criminal street gang. (Trav. (ECF No. 16) at 7.) This alleged error, he contends, made his trial fundamentally unfair. (Pet. (ECF No. 1) at 25.)

### A. State Court Decision

> [A] finding that the gasoline station crimes were committed for the benefit of Killa Mobb had no bearing on whether the crimes here

14

were committed for the benefit of Killa Mobb. That a gang enhancement may have been found true in one case does not mean it must be found true in another. The evidence in each case is different, including the evidence regarding the gang's primary activities or the pattern of criminal activity. And [], the evidence here was not admitted for the truth of the matter (that Killa Mobb was a criminal street gang). Rather, it was admitted to show part of the basis for [] Bell's opinion that Christian and Whitfield were Killa Mobb gang members.

For these reasons, there was no error, constitutional or otherwise, in admitting this evidence.

<u>Christian</u>, 2014 WL 618255, at *5.

### B. Analysis

#### 1. Legal Standards for Admission of Evidence

It is well established that "federal habeas corpus relief does not lie for errors of state law." <u>Estelle</u>, 502 U.S. at 67 (citing <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)); <u>see also</u> <u>Wilson</u>, 562 U.S. at 5; <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984). Thus, whether a petitioner's "due process rights were violated by the admission of evidence . . . . is [usually] no part of a federal court's habeas review of a state conviction." <u>Id.</u>; <u>see also</u> <u>Rhoades v. Henry</u>, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief.").

Nonetheless, the erroneous admission of evidence at trial may violate due process if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." <u>Jammal</u>, 926 F.2d at 919; <u>accord</u> <u>Gonzalez v. Knowles</u>, 515 F.3d 1006, 1011 (9th Cir. 2008). However, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009). Indeed, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." <u>Id.</u> (citation omitted); <u>see also</u> <u>Munoz v. Gonzales</u>, 596 F. App'x 588 (9th Cir. 2015) (same; citing <u>Holley</u>, 568 F.3d at 1101).

////

1      **2.   Discussion**

2          Here, the Court of Appeal reasonably held that the admission of the finding that the separate

3      crimes were committed for Killa Mobb's benefit did not offend due process.  The gang

4      enhancement in this case required the state to prove that petitioner committed the crimes at issue

5      for the benefit of Killa Mobb.  See Cal. Pen. Code § 186.22(b)(1); (see also 4 CT at 1052).  As

6      the Court of Appeal correctly noted, "[t]he evidence in each case [was] different, including the

7      evidence regarding the gang's primary activities or the pattern of criminal activity."  Christian,

8      2014 WL 618255, at *5.  Just because other Killa Mobb members committed separate crimes for

9      the benefit of Killa Mobb, it does not follow that petitioner committed the crimes here for the

10     benefit of Killa Mobb.  The trial court instructed the jury to base its decisions only on evidence

11     presented in petitioner's trial, (4 CT at 1015, 1022), and the jury presumably followed this

12     instruction, Weeks, 528 U.S. at 234.

13         Furthermore, the Court of Appeal found that the evidence was admitted to show the basis for

14     Bell's opinion that Christian and Whitfield were Killa Mobb members, not to prove that Killa

15     Mobb was a criminal street gang.  Finally, as noted, the Supreme Court "has not yet made a clear

16     ruling that admission of . . . overtly prejudicial evidence constitutes a due process violation

17     sufficient to warrant issuance of the writ."  Holley, 568 F.3d at 1101.  Petitioner has identified no

18     controlling cases holding that an alleged error of this type violates due process, and the court

19     knows of none.  Accordingly, the Court of Appeal's rejection of this claim was not contrary to, or

20     an unreasonable application of, clearly established federal law.

21     **IV.     Multiple Sentences for Single Act or Omission**

22          **A.  Background**

23         In his second state habeas petition, petitioner argued that the trial court imposed multiple

24     sentences for a single act or omission, thus violating section 654 of the California Penal Code and

25     the Due Process Clause.  (LD 21.)  On January 15, 2015, the Superior Court denied his second

26     state petition.  (LD 22.)  The court ruled that the petition was successive and, hence, procedurally

27     barred under California law.  (Id. at 1–2 (citing In re Robbins, 18 Cal. 4th 770, 811–12 (1998),

28     ////

and In re Clark, 5 Cal. 4th 750, 774–75 (1993).)  Alternatively, the court held that the claim failed

on the merits.  The superior court reasoned as follows:

> Petitioner does not show any constitutional violation, any Penal
> Code § 654 violation, or any abuse of discretion in the court's
> choice to impose consecutive sentences on each attempted murder
> count and their accompanying enhancements.  Each count
> concerned a different victim.

Id. at 2 (citing People v. King, 5 Cal. 4th 59 (1992); People v. Miller, 18 Cal. 3d 873 (1977);

People v. Williams, 14 Cal. App. 4th 601 (Cal. Ct. App. 1993).)

Petitioner argues that the trial court imposed multiple sentences for a single act or omission in

violation of Cal. Penal Code § 654(a) and due process.  (Pet. (ECF No. 1) at 29.)  While he

disputes that this claim is procedurally defaulted, his argument is unclear.  (Trav. (ECF No. 16) at

7–8.)

**B.  Analysis**

The superior court reasonably rejected petitioner's fourth claim on the merits.[3]  Therefore, in

the interest of judicial economy, the undersigned declines to consider the question of procedural

default.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (stating that "procedural-bar issue

[need not] invariably be resolved"); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002)

("Procedural bar issues are not infrequently more complex than the merits issues presented by the

appeal, so it may well make sense in some instances to proceed to the merits if the result will be

the same.").

**1.  Legal Standards for Claim of Unconstitutional Sentence**

As noted, "federal habeas corpus relief does not lie for errors of state law."  Estelle, 502 U.S.

at 67.  Consistent with this principle, "[t]he decision whether to impose sentences concurrently or

consecutively is [usually] a matter of state criminal procedure and is not within the purview of

federal habeas corpus."  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (citation

---

[3] While petitioner also sought habeas relief in the state appellate and supreme courts, because
those courts summarily denied petitioner's claims on the merits, this court looks to the last
reasoned decision of the state court, which here is the habeas decision of the superior court.  See
Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).

omitted).  Nevertheless, under narrow circumstances, the misapplication of state sentencing law may violate due process if it "is so arbitrary or capricious as to constitute an independent due process violation."  See Richmond v. Lewis, 506 U.S. 40, 50 (1992) (citation omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." (citations omitted).)

California Penal Code section 654(a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of punishment, but in no case shall the act or omission be punished under more than one provision."  Section 654 generally prohibits the imposition of multiple punishments for offenses committed during an indivisible course of conduct incident to a single objective.  See People v. Miller, 18 Cal.3d 873, 885 (2004); People v. Perez, 23 Cal. 3d 545, 550–51 (1979).  However, the California Supreme Court has "long held that the limitations of section 654 do not apply to crimes of violence against multiple victims."  People v. Oates, 32 Cal. 4th 1048, 1063 (2004) (citing People v. King, 5 Cal. 4th 59, 78 (1993)).  Therefore, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he [ordinarily] may be convicted and punished for each crime of violence committed against a different victim."  People v. Ramos, 30 Cal.3d 553, 587 (1982) (citation omitted), rev'd on other grounds, California v. Ramos, 463 U.S. 992 (1983).

## 2.  Discussion

Here, the Superior Court reasonably rejected petitioner's claim that the trial judge imposed multiple sentences for a single act in violation of § 654(a) and due process.  For starters, because it is a question of state law, federal habeas relief is unavailable for his claim that the trial court violated § 654(a).  See Estelle, 502 U.S. at 67; Cacoperdo, 37 F.3d at 507; Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (declining to review the contention that state court violated § 654 in imposing consecutive sentences because federal courts may grant "habeas corpus relief only for violations of federal law").

////

18

Moreover, as noted, California courts have long held that § 654(a) does not apply to crimes of violence against multiple victims. Petitioner was convicted of several counts of attempted murder, and the Superior Court noted that each count concerned a different victim. Thus, because the trial court's sentence was within the boundaries of state law, it was not so arbitrary or capricious or fundamentally unfair as to violate due process. Cf. Lewis, 506 U.S. at 50 (1992); Rhode, 41 F.3d at 469. Accordingly, the Superior Court's rejection of petitioner's fourth claim was not contrary to, or an unreasonable application of, clearly established federal law.

## V. Sufficiency of the Evidence

### A. Background

In his final claim, petitioner contends the evidence adduced at trial was insufficient to prove he was the shooter. Petitioner raised this claim in his second state habeas petition. (LD 21.) Like the prior claim, the court denied it because it was "barred by Robbins/Clark" as successive. (LD 22 at 2) The court further found petitioner did not qualify for an innocence exception to the Robbins/Clark bar because he had not "shown 'unerring innocence'" and because petitioner failed "to attach any reasonably available documentary new evidence, not presented at trial, that would show that he was not the shooter, other than his own self-serving declaration that he was not the shooter." (Id.) The court went on to note that even if petitioner's claim were not barred, "[t]he summary of the evidence introduced at trial, as set forth in the [Court of Appeal's] decision denying [p]etitioner's direct appeal, clearly shows that the evidence was sufficient to support the convictions." (Id. at 2-3.)

Petitioner argues that codefendant Riley was the actual shooter from the Cavalier. (Pet. (ECF No. 1) at 35–36.) To support this claim, he asserts as follows:

- Taylor, the driver of the truck that was shot at, watched the surveillance video and told a detective that the shooter had been in the front passenger seat of the Cavalier. He recalled that the person was dark-skinned, skinny, wore a beanie, and had two-inch hair twisties.
- Atwaal, at one point, stated that the shooter from the Cavalier was chubby with twisties and that Riley was the shooter from that vehicle.

////

- Although the jury viewed video of the incident, it was of poor quality and did not permit identification of persons' faces or hairstyles.

(Id.)

Based on these assertions, petitioner suggests that Riley was in the front passenger seat and opened fired from there. Cf. id. Additionally, he asserts that this claim is not procedurally barred because he is actually innocent. (Trav. (ECF No. 1 6) at 9–10.)

**B. Analysis**

Again, the undersigned declines to consider the question of procedural default. Addressing the reasonableness of the Superior Court's rejection of this claim promotes judicial economy. See, e.g., Singletary, 520 U.S. at 525.

When reviewing the sufficiency of the evidence to support a criminal conviction, a federal habeas court must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). "But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318–19. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citation omitted). The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam).

Here, a rational trier of fact could have found beyond a reasonable doubt that petitioner was the actual shooter from the Cavalier. Contrary to petitioner's apparent contention that Riley was in the front seat of the Cavalier, Atwaal testified that Riley was in the back seat and that petitioner was in the front seat. (3 RT 697–98.) Likewise, the Court of Appeal found that petitioner was in the front seat, and petitioner has not rebutted this finding by clear and convincing evidence. And, even assuming that Riley was in the front seat at some point, Taylor and Atwaal testified that petitioner exited the Cavalier when he shot at Taylor's truck. (See 2 RT 450–51; 3 RT 698.)

////

Granted, Atwaal did state during a police interview before the trial that Riley, not petitioner, was the shooter from the Cavalier. (3 RT 700.) However, Atwaal testified that that he did this because the detective "kind of confused [him] when he was showing [him] the video[.]" (Id.) Moreover, Atwaal testified that he was "a hundred percent" sure that petitioner was the shooter. (Id. at 700–01.) And assessing Atwaal's credibility was the jury's responsibility. See, e.g., United States v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973) ("Credibility . . . is for the jury—. . . the lie detector in the courtroom.").

For these reasons, under the highly deferential standard that Jackson and Coleman set, a rational juror could have concluded that petitioner was the actual shooter from the Cavalier. Accordingly, the Superior Court's rejection of petitioner's fifth claim was not contrary to, or an unreasonable application of, clearly established federal law.

**CONCLUSION**

Petitioner has failed to establish that the Court of Appeal's decision rejecting his claims was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Because he has not satisfied the requirements of § 2254(d), the undersigned HEREBY RECOMMENDS that his habeas petition be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the

objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  September 26, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11/9
DLB1/prisoner-habeas/wile1597.fr  final